IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Nick Mainville, | Case No. |
| *On behalf of himself and those similarly situated*, | |
| Plaintiff, | |
| v. | |
| College Town Pizza, Inc.; Route 41 Pizza, LLC; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management Inc.; Susan Graves; Dave Randall; Dennis Denman; Doe Corporation 1-10; John Doe 1-10 | **CLASS ACTION COMPLAINT** **(JURY TRIAL DEMANDED)** |
| Defendants. | |

1.     Nick Mainville, on behalf of himself and similarly-situated individuals, brings this action against Defendants College Town Pizza, Inc.; Route 41 Pizza, LLC; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management Inc.; Susan Graves; Dave Randall; and Dennis Denman ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Wisconsin wage and hour laws, and for unjust enrichment.

2.      Defendants operate 178 Domino's Pizza locations in Wisconsin, Minnesota, West Virginia, Ohio, Pennsylvania, Kentucky, South Dakota, North Dakota, and Iowa (the "Team Honey Badger stores").

3.      Plaintiff seeks to represent the delivery drivers who have worked at the Team Honey Badger stores.

4.      Defendants repeatedly and willfully violated the Fair Labor Standards Act and Wisconsin wage and hour laws by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

5.      All delivery drivers at the Team Honey Badger stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## JURISDICTION AND VENUE

6.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district.

## PARTIES

### Plaintiff

### Nick Mainville

8.      Plaintiff Nick Mainville is a resident of Wisconsin.

9.      Plaintiff is an "employee" of all of the Defendants as defined in the FLSA and Wisconsin wage and hour laws.

2

10.     Plaintiff has given written consent to join this action.

**<u>Defendants</u>**

11.     Team Honey Badger stores are owned and/or operated by a number of entities and individuals, each of whom employ Plaintiff and the Delivery Drivers.

12.     Defendants operate the Team Honey Badger Domino's stores.

13.     Defendants operate the Team Honey Badger stores out of their headquarters in Willmar, Minnesota.

14.     Upon information and belief, "Team Honey Badger" is the informal name used to refer to Defendants' Domino's Pizza franchise operation.

15.     The Entity Defendants—College Town Pizza, Inc., Route 41 Pizza, LLC, 5 Star Pizza, LLC, Two Ten Twenty Pizza, Inc., and Dough Management Inc.—are all part of Defendants' Domino's Pizza franchise operation.

16.     The Individual Defendants—Susan Graves, Dave Randall, and Dennis Denman—are the owners and operators of Team Honey Badger and the Entity Defendants.

17.     Some or all of the Individual Defendants have entered into franchise agreements with Domino's Pizza Franchising, LLC to operate Domino's Pizza stores.

18.     Some or all of the Individual Defendants have entered into franchise agreements with Domino's Pizza Franchising, LLC whereby the Individual Defendants agree to ensure that any Domino's stores operated pursuant to the franchise agreement will comply with all laws, including wage and hour laws.

19.     Defendants have the authority to and do hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and method of pay, and/or maintain employee records.

20.     Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Domino's Pizza franchise stores and maintain interrelated operations, centralized control of labor relations, common management, and common ownership and financial control. Because the work performed by Plaintiff and all other delivery drivers benefited all Defendants and directly or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

**College Town Pizza, Inc.**

21.     Defendant College Town Pizza, Inc. is a domestic corporation with its principal place of business at 1617 Highway 12 East, Suite 240, Willmar, MN 56201.

22.     The Domino's Pizza stores owned and operated by College Town Pizza, Inc. are also referred to as the "Team Honey Badger" Domino's Pizza stores.

23.     Upon information and belief, College Town Pizza, Inc. owns and operates Domino's Pizza stores in Minnesota.

24.     College Town Pizza, Inc. is owned and operated by Susan Graves and Dave Randall.

25.     College Town Pizza, Inc. is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the Team Honey Badger stores.

4

26.    College Town Pizza, Inc. may command where, when, and how much labor is performed by the delivery drivers at the Team Honey Badger stores.

27.    College Town Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

28.    Upon information and belief, College Town Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

29.    College Town Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

30.    At all relevant times, College Town Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

31.    College Town Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

32.    At all relevant times, College Town Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

33.    College Town Pizza, Inc.'s gross revenue exceeds $500,000 per year.

5

**Route 41 Pizza, LLC**

34.     Defendant Route 41 Pizza, LLC is a domestic limited liability company with its principal place of business at 1617 Highway 12 East, Wilmar, MN 56201.

35.     The Domino's Pizza stores owned and operated by Route 41 Pizza, LLC are also referred to as the "Team Honey Badger" Domino's Pizza stores.

36.     Upon information and belief, Route 41 Pizza, LLC owns and operates Domino's Pizza stores in Wisconsin.

37.     Route 41 Pizza, LLC is owned and operated by Susan Graves and Dave Randall.

38.     Route 41 Pizza, LLC is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the Team Honey Badger stores.

39.     Route 41 Pizza, LLC is the entity that appears on Plaintiff's paystubs for work he completes for Defendants.

40.     Route 41 Pizza, LLC may command where, when, and how much labor is performed by the delivery drivers at the Team Honey Badger stores.

41.     Route 41 Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

42.     Upon information and belief, Route 41 Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

6

43.     Route 41 Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

44.     At all relevant times, Route 41 Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

45.     Route 41 Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

46.     At all relevant times, Route 41 Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

47.     Route 41 Pizza, LLC's gross revenue exceeds $500,000 per year.

**5 Star Pizza, LLC**

48.     Defendant 5 Star Pizza, LLC is a domestic limited liability company with its principal place of business at 1617 Highway 12 East, Willmar, MN 56201.

49.     The Domino's Pizza stores owned and operated by 5 Star Pizza, LLC are also referred to as the "Team Honey Badger" Domino's Pizza stores.

50.     Upon information and belief, 5 Star Pizza, LLC owns and operates Domino's Pizza stores in West Virginia, Ohio, Pennsylvania, and Kentucky.

51.     5 Star Pizza, LLC is owned and operated by Susan Graves and Dennis Denman.

52.     5 Star Pizza, LLC is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the Team Honey Badger stores.

53.     5 Star Pizza, LLC may command where, when, and how much labor is performed by the delivery drivers at the Team Honey Badger stores.

54.     5 Star Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

55.     Upon information and belief, 5 Star Pizza, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

56.     5 Star Pizza, LLC has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

57.     At all relevant times, 5 Star Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

58.     5 Star Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

59.     At all relevant times, 5 Star Pizza, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

60.     5 Star Pizza, LLC's gross revenue exceeds $500,000 per year.

**Two Ten Twenty Pizza, Inc.**

61.     Defendant Two Ten Twenty Pizza, Inc. is a domestic corporation with its principal place of business at 1617 Highway 12 East, Willmar, MN 56201.

62.     The Domino's Pizza stores owned and operated by Two Ten Twenty Pizza, Inc. are also referred to as the "Team Honey Badger" Domino's Pizza stores.

63.     Upon information and belief, Two Ten Twenty Pizza, Inc. owns and operates Domino's Pizza stores in North Dakota, South Dakota, and Iowa.

64.     Two Ten Twenty Pizza, Inc. is owned and operated by Susan Graves and Dave Randall.

65.     Two Ten Twenty Pizza, Inc. is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the Team Honey Badger stores.

66.     Two Ten Twenty Pizza, Inc. may command where, when, and how much labor is performed by the delivery drivers at the Team Honey Badger stores.

67.     Two Ten Twenty Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

68.     Upon information and belief, Two Ten Twenty Pizza, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

9

69.     Two Ten Twenty Pizza, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

70.     At all relevant times, Two Ten Twenty Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

71.     Two Ten Twenty Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

72.     At all relevant times, Two Ten Twenty Pizza, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

73.     Two Ten Twenty Pizza, Inc.'s gross revenue exceeds $500,000 per year.

**Dough Management Inc.**

74.     Defendant Dough Management Inc. is a domestic corporation with its principal place of business at 1617 Highway 12 East, Willmar, MN 56201.

75.     The Domino's Pizza stores owned and operated by Dough Management Inc. are also referred to as the "Team Honey Badger" Domino's Pizza stores.

76.     Upon information and belief, Dough Management Inc. serves as the payroll company for the Team Honey Badger stores.

77.     Dough Management, Inc. is owned and operated by Susan Graves.

78.     Upon information and belief, Dough Management, Inc. is one of the entities that has entered into a franchise agreement with Domino's Pizza to operate the Team Honey Badger stores.

79.     Dough Management, Inc. may command where, when, and how much labor is performed by the delivery drivers at the Team Honey Badger stores.

80.     Dough Management, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

81.     Upon information and belief, Dough Management, Inc. applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, and reimbursement of automobile expenses.

82.     Dough Management, Inc. has direct or indirect control of the terms and conditions of Plaintiff's work and the work of similarly situated employees.

83.     At all relevant times, Dough Management, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

84.     Dough Management, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

85.     At all relevant times, Dough Management, Inc. has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

86.     Dough Management, Inc.'s gross revenue exceeds $500,000 per year.

**Susan Graves**

87.     Susan Graves is an owner and operator of College Town Pizza, Inc., Route 41 Pizza, LLC, 5 Star Pizza, LLC, Two Ten Twenty Pizza, Inc., and Dough Management Inc..

88.     Susan Graves is a person who has entered into a franchise agreement with Domino's Pizza to operate the Team Honey Badger stores.

89.     Susan Graves is the president and CEO of some or all of the Entity Defendants.

90.     Susan Graves may command where, when, and how much labor is performed by the delivery drivers at the Team Honey Badger stores.

91.     Susan Graves is individually liable to the Team Honey Badger stores' delivery drivers under the definitions of "employer" set forth in the FLSA and Wisconsin law because she owns and operates the Team Honey Badger stores, serves as a manager of the one or more of the Entity Defendants, ultimately controls significant aspects of the Team Honey Badger stores' day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

92.     At all relevant times, by virtue of her role as owner and operator of the one or more of the Entity Defendants, Susan Graves has had financial control over the operations at each of the Team Honey Badger stores.

93.     At all relevant times, by virtue of her role as owner and operator of one or more of the Entity Defendants, Susan Graves has a role in significant aspects of the Team Honey Badger stores' day to day operations.

94.     At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had control over the Team Honey Badger stores' pay policies.

95.     At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had power over personnel and payroll decisions at the Team Honey Badger stores, including but not limited to influence of delivery driver pay.

96.     At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had the power to hire, fire and discipline employees, including delivery drivers at Team Honey Badger stores.

97.     At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had the power to stop any illegal pay practices that harmed delivery drivers at the Team Honey Badger stores.

98.     At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had the power to transfer the assets and liabilities of the Team Honey Badger stores.

99.     At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had the power to declare bankruptcy on behalf of the Team Honey Badger stores.

100.    At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves as had the power to enter into contracts on behalf of each of the Team Honey Badger stores.

101.    At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves has had the power to close, shut down, and/or sell each of the Team Honey Badger stores.

102.    At all relevant times, by virtue of her role as owner and operator of the Entity Defendants, Susan Graves had authority over the overall direction of each of Team Honey Badger stores and was ultimately responsible for their operations.

103.    The Team Honey Badger stores function for Susan Graves's profit.

104.    Susan Graves has influence over how the Team Honey Badger stores can run more profitably and efficiently.

**Dave Randall**

105.    Dave Randall is an owner and operator of College Town Pizza, Inc., Route 41 Pizza, LLC, and Two Ten Twenty Pizza, Inc..

106.    Dave Randall is a person who has entered into a franchise agreement with Domino's to operate the Team Honey Badger stores.

107.    Dave Randall is the operating partner of some or all of the Entity Defendants.

14

108.     Dave Randall may command where, when, and how much labor is performed by the delivery drivers at the Entity Defendants stores.

109.     Dave Randall is individually liable to the Team Honey Badger stores delivery drivers under the definitions of "employer" set forth in the FLSA and Wisconsin law because he owns and operates the Entity Defendants stores, serves as a manager of the Entity Defendants, ultimately controls significant aspects of the Entity Defendants day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

110.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had financial control over the operations at each of the Entity Defendants stores.

111.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has a role in significant aspects of the Entity Defendants day to day operations.

112.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had control over the Entity Defendants' pay policies.

113.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had power over personnel and payroll decisions at the Entity Defendants stores, including but not limited to influence of delivery driver pay.

114.     At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had the power to hire, fire and discipline employees, including delivery drivers at Entity Defendants stores.

15

115.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had the power to stop any illegal pay practices that harmed delivery drivers at the Entity Defendants stores.

116.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had the power to transfer the assets and liabilities of the Entity Defendants stores.

117.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had the power to declare bankruptcy on behalf of the Entity Defendants stores.

118.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall as had the power to enter into contracts on behalf of each of the Entity Defendants stores.

119.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall has had the power to close, shut down, and/or sell each of the Entity Defendants stores.

120.    At all relevant times, by virtue of his role as owner and operator of the Entity Defendants, Dave Randall had authority over the overall direction of each of Entity Defendants stores and was ultimately responsible for their operations.

121.    The Entity Defendants stores function for Dave Randall's profit.

122.    Dave Randall has influence over how the Entity Defendants stores can run more profitably and efficiently.

**Dennis Denman**

123.    Dennis Denman is an owner and operator of 5 Star Pizza, LLC.

124.    Dennis Denman is a person who has entered into a franchise agreement with Domino's to operate the Team Honey Badger stores.

125.    Dennis Denman is the operating partner of some or all of the 5 Star Pizza, LLC stores.

126.    Dennis Denman may command where, when, and how much labor is performed by the delivery drivers at the 5 Star Pizza, LLC stores.

127.    Dennis Denman is individually liable to the Team Honey Badger stores delivery drivers under the definitions of "employer" set forth in the FLSA and Wisconsin law because he owns and operates the Team Honey Badger stores, serves as a manager of 5 Star Pizza, LLC, ultimately controls significant aspects of 5 Star Pizza, LLC's day-to-day functions, and ultimately has control over compensation and reimbursement of employees.  29 U.S.C. § 203(d).

128.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had financial control over the operations at each of the 5 Star Pizza, LLC stores.

129.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has a role in significant aspects of the 5 Star Pizza, LLC stores' day to day operations.

130.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had control over the 5 Star Pizza, LLC stores' pay policies.

131.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had power over personnel and payroll decisions at the 5 Star Pizza, LLC stores, including but not limited to influence of delivery driver pay.

132.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had the power to hire, fire and discipline employees, including delivery drivers at 5 Star Pizza, LLC stores.

133.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had the power to stop any illegal pay practices that harmed delivery drivers at the 5 Star Pizza, LLC stores.

134.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had the power to transfer the assets and liabilities of the 5 Star Pizza, LLC stores.

135.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had the power to declare bankruptcy on behalf of the 5 Star Pizza, LLC stores.

136.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman as had the power to enter into contracts on behalf of each of the 5 Star Pizza, LLC stores.

137.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman has had the power to close, shut down, and/or sell each of the 5 Star Pizza, LLC stores.

138.    At all relevant times, by virtue of his role as owner and operator of 5 Star Pizza, LLC, Dennis Denman had authority over the overall direction of each of 5 Star Pizza, LLC stores and was ultimately responsible for their operations.

139.    The 5 Star Pizza, LLC stores function for Dennis Denman's profit.

140.    Dennis Denman has influence over how the 5 Star Pizza, LLC stores can run more profitably and efficiently.

**Doe Corporation 1-10**

141.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of the Team Honey Badger stores, and qualify as "employers" of Plaintiff and the delivery drivers at the Team Honey Badger stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

142.    Upon information and belief, Susan Graves owns and/or operates, in whole or in part, a number of other entities that make up part of the Defendants' operation.

143.    Upon information and belief, the franchisor, Domino's, may also be liable as an employer of the delivery drivers employed at Team Honey Badger stores.

**John Doe 1-10**

144.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

19

145.    Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at the Team Honey Badger stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

146.    Upon information and belief, Susan Graves has entered into co-owner relationships with a number of his managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at the Team Honey Badger stores as that term is defined by the FLSA and Wisconsin wage and hour laws.

147.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

## FACTS

### Class-wide Factual Allegations

148.    During all relevant times, Defendants have operated the Team Honey Badger stores.

149.    Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at the Team Honey Badger stores.

150.    All delivery drivers employed at the Team Honey Badger stores over the last three years have had essentially the same job duties.

151.    The delivery drivers at the Team Honey Badger stores worked dual jobs, one where they completed deliveries and received tips, and another when they helped inside the store and did not receive tips.

152.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Team Honey Badger stores folding boxes, doing dishes,

20

stocking coolers, mopping and sweeping the floor, taking the trash out, preparing food, and completing other duties inside the restaurant as necessary.

153.    Plaintiff and similarly situated delivery drivers have been paid minimum wage, slightly above minimum wage, or minimum wage minus a tip credit for the hours they worked delivering for Team Honey Badger stores.

154.    Defendants require delivery drivers at Team Honey Badger stores to provide cars to use while completing deliveries for Defendants.

155.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

156.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

157.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

158.    Plaintiff and similarly situated delivery drivers receive a per-mile reimbursement payment that is less than the IRS standard business mileage rate.

159.    Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers.

160.    The Team Honey Badger stores do not track or record the delivery drivers' actual expenses.

161.    The Team Honey Badger stores do not collect receipts from their delivery drivers related to the automobile expenses they incur.

162.    The Team Honey Badger stores do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

163.    The Team Honey Badger stores do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

164.    The Team Honey Badger stores do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

165.    The Team Honey Badger stores do not collect receipts of delivery drivers' automobile registration costs.

166.    The Team Honey Badger stores do not collect receipts of delivery drivers' automobile financing or purchase costs.

167.    The Team Honey Badger stores do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at the Team Honey Badger stores.

168.    The Team Honey Badger stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

22

169.    The Team Honey Badger stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

170.    The Team Honey Badger stores do not reasonably approximate the delivery drivers' expenses.

171.    The Team Honey Badger stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

172.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

   a.    2018: 54.5 cents/mile
   b.    2019: 58 cents/mile
   c.    2020: 57.5 cents/mile
   d.    2021: 56 cents/mile

173.    The delivery drivers at the Team Honey Badger stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate— *e.g.*, cell phone and data charges.

174.    The delivery drivers at the Team Honey Badger stores advance a business expense, interest free, to Defendants when they provide cars to use at work.

175.    Defendants reimbursed their delivery drivers amounts less than they would have had to be pay if they had rented vehicles each day to use to make deliveries.

176.    Defendants reimbursed their delivery drivers amounts less than they would have had to pay to own and maintain a fleet of vehicles to complete their deliveries.

177.   Defendants benefit from the delivery drivers at the Team Honey Badger stores spending time off the clock repairing and maintaining their vehicles.

178.   Defendants benefit from delivery drivers at the Team Honey Badger stores taking on the risk of using their vehicles to drive for Defendants' business.

179.   Defendants save substantial insurance costs and exposure to liability by requiring their judgment proof minimum wage workers to take on the risk of accident or injury for them.

180.   As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Wisconsin law.

181.   Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at the Team Honey Badger stores.

182.   Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

183.   Defendants have failed to properly take a tip credit from delivery drivers' wages and the wages of similarly situated employees because, after accounting for unreimbursed expenses, Defendants have paid delivery drivers a lower wage rate than they informed the delivery drivers they would be paid.

184.    Defendants have also failed to properly inform Plaintiff and similarly situated delivery drivers of the requirements for taking a tip credit. 29 C.F.R.§ 531.59.

185.    Defendants have willfully failed to pay federal and Wisconsin state minimum wage to Plaintiff and similarly situated delivery drivers at the Team Honey Badger stores, and have been unjustly enriched by the delivery drivers' incurring automobile expenses for their benefit.

## Plaintiff's Individual Factual Allegations

186.    Plaintiff has worked at the Domino's Pizza store in Appleton, Wisconsin owned and operated by Defendants since 2017.

187.    Plaintiff works dual jobs: one job where Plaintiff's job, Plaintiff is on the road making deliveries and receiving tips, and another job when Plaintiff helps with tasks inside the store and does not receive tips.

188.    Plaintiff is nominally paid minimum wage minus a tip credit for all hours worked while on the road.

189.    When Plaintiff is not delivering food, he works inside the restaurant. His work inside the restaurant includes doing dishes, cleaning, folding boxes, stocking the cooler, answering phones, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

190.    Plaintiff is paid minimum wage for the hours he works inside the store.

191.    Plaintiff is required to use his own car to deliver pizzas.

192.    Plaintiff is reimbursed between $.28 and $.32 cents per mile.

193.    Plaintiff regularly drives between 5 miles per round trip delivery.

194.   Plaintiff is required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

195.   Plaintiff is required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

196.   Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

197.   Defendants do not track the actual expenses incurred by Plaintiff.

198.   Defendants do not ask Plaintiff to provide receipts of the expenses he incurs while delivering pizzas for Defendants.

199.   Defendants do not reimburse Plaintiff based on his actual delivery-related expenses.

200.   Plaintiff is not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

201.   Defendants do not reimburse Plaintiff based on a reasonable approximation of his expenses.

202.   Plaintiff regularly makes approximately 5 deliveries per hour during the hours he works as a delivery driver.

203.    Plaintiff regularly drives 5 miles per round trip delivery.

204.    In 2019, for example, the IRS business mileage reimbursement was $.58 per mile, which reasonably approximated the automobile expenses incurred delivering pizzas. http://www.irs.gov/Tax-Professionals/Standard-Mileage-Rates. Using the IRS rate as the proper measure of Plaintiff's automobile expenses, every mile driven on the job decreased his net wages by approximately $.28 ($.58 - $.30) per mile. Considering Plaintiff's estimate of about 5 miles per delivery, Defendants under-reimbursed him about $1.40 per delivery ($.28 x 5 average miles).

205.    Defendants fail to properly take a tip credit from Plaintiff's wages because, after accounting for unreimbursed expenses, Defendants take more of a tip credit than they informed Plaintiff they would be taking.

206.    Defendants fail to pay Plaintiff minimum wage as required by law.

**Collective Action Allegations**

207.    Plaintiff brings the First Count on behalf of himself and

All similarly situated current and former delivery drivers employed at the Team Honey Badger stores owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

208.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for

automobile expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

209.   Defendants' unlawful conduct is pursuant to a company policy or practice.

210.   Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

211.   Defendants are aware or should have been aware that they are not permitted to pay employees a tipped wage rate for hours worked in a non-tipped capacity.

212.   Defendants are aware or should have been aware that they were obligated to actually pay the tipped wage rate that they informed Plaintiff and other delivery drivers that they would pay.

213.   Defendants' unlawful conduct has been widespread, repeated, and consistent.

214.   The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

215.   The FLSA Collective members are readily identifiable and ascertainable.

216.   In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

## Class Action Allegations

217.   Plaintiff brings the Second and Third Counts under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Team
> Honey Badger stores in the State of Wisconsin between the date two years
> prior to the filing of the original complaint and the date of final judgment in
> this matter ("Wisconsin Wage Class").

218.   Plaintiff brings the Fourth Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at the Team
> Honey Badger stores in the State of Wisconsin between the date six years
> prior to the filing of the original complaint and the date of final judgment in
> this matter ("Unjust Enrichment Class") (Combined with Wisconsin Wage
> Class "Rule 23 Classes")

219.   Excluded from the Rule 23 Classes are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Classes.

220.   The number and identity of the Wisconsin Wage Class members are ascertainable from Defendants' records.

221.   The number and identity of the Unjust Enrichment Class members are ascertainable from Defendants' records.

222.   The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each member of the Rule 23 Classes are determinable from Defendants' records.

223.   All of the records relevant to the claims of members of the Rule 23 Classes should be found in Defendants' records.

224.   For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

225.   Notice can be provided by means permissible under Rule 23.

226.   The members of the Rule 23 Classes are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

227.   There are more than 50 Wisconsin Wage Class members.

228.   There are more than 50 Unjust Enrichment Class members.

229.   Plaintiff's claims are typical of those claims which could be alleged by any member of the Rule 23 Classes, and the relief sought is typical of the relief which would be sought by each member of the Rule 23 Classes in separate actions.

230.   Plaintiff and the members of the Rule 23 Classes were subject to the same practices of Defendants, as alleged herein, of failing to pay minimum wage, untimely payment of wages, and being unjustly enriched by their automobile policy.

231.   Plaintiff and the Wisconsin Wage Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Wisconsin wage law.

232.   Plaintiff and the Unjust Enrichment Class members have all unjustly enriched Defendants in the same way.

233.   Plaintiff and the members of the Rule 23 Classes sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

234.    Plaintiff is able to fairly and adequately protect the interests of the Wisconsin Wage Class and has no interests antagonistic to the Wisconsin Wage Class.

235.    Plaintiff is able to fairly and adequately protect the interests of the Unjust Enrichment Class and has no interests antagonistic to the Unjust Enrichment Class.

236.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

237.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

238.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

239.    The Wisconsin Wage Class and the Unjust Enrichment Class are proper treated as subclasses pursuant to Rule 23(c)(5).

240.    Common questions of law and fact exist as to the Wisconsin Wage Class that predominate over any questions only affecting Plaintiff and the Wisconsin Wage Class members individually and include, but are not limited to:

      a.  Whether Plaintiff and the Wisconsin Wage Class were subject to a policy that required them to maintain and pay for safe, operable, and legally compliant automobiles to use in completing deliveries;

b.   Whether Plaintiff and the Wisconsin Wage Class incurred expenses for the
benefit of Defendants in the course of completing deliveries;

c.   Whether Defendants reimbursed Plaintiff and the Wisconsin Wage Class
members for their actual expenses;

d.   Whether Defendants reimbursed Plaintiff and the Wisconsin Wage Class
members at the IRS standard business mileage rate for the miles they drove
in making deliveries;

e.   Whether Defendants properly reimbursed Plaintiff and the Wisconsin Wage
Class members;

f.   Whether Plaintiff and the Wisconsin Wage Class members were subject to a
common expense reimbursement policy that resulted in wages to drop below
legally allowable minimum wage;

g.   Whether Defendants properly claimed a tip credit from the wages of Plaintiff
and the Wisconsin Wage Class;

h.   Whether Plaintiff and the Wisconsin Wage Class were actually paid the wage
rate they were promised by Defendants;

i.   The nature and extent of class-wide injury and the measure of damages for
those injuries

241.   Common questions of law and fact exist as to the Unjust Enrichment Class
that predominate over any questions only affecting Plaintiff and the Unjust Enrichment
Class members individually and include, but are not limited to:

a.   Whether Plaintiff and the Unjust Enrichment Class members were subject to
a common policy that required them to provide cars to complete deliveries
for Defendants;

b.   Whether Plaintiff and the Unjust Enrichment Class members were subject to
a common automobile expense reimbursement policy;

32

    c.   Whether Plaintiff and the Unjust Enrichment Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.   Whether Plaintiff and the Unjust Enrichment Class conferred a measurable benefit on Defendants;

    e.   Whether Defendants avoided business expenses they would have otherwise been required to cover but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

    f.   How much it would have cost Defendants to operate their business but for Plaintiff and the Unjust Enrichment Class providing cars to use to make deliveries;

    g.   Whether Defendants were aware of the benefit that was being conferred on them by Plaintiff and the Unjust Enrichment Class;

    h.   The nature and extent of class-wide injury and the measure of damages for those injuries.

242.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Classes, Plaintiff will request payment of a service award upon resolution of this action.

## CAUSES OF ACTION

## COUNT 1

### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

243.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

244.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

245.    Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

246.    Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

247.    Defendants failed to properly claim a tip credit from the wages of Plaintiff and the FLSA collective because Plaintiff and the FLSA collective were paid a wage rate lower than Defendants informed them that they would be paid.

248.    By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

249.    Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

250.    As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## COUNT 2

**Failure to Pay Minimum Wages – Wis. Stat. § 104.01 *et seq.***
**(On Behalf of Plaintiff and the Wisconsin Wage Class)**

251.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

252.    Defendants paid Plaintiff and the Wisconsin Wage Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

253.    Defendants ostensibly paid Plaintiff and the Wisconsin Wage Class at or close to minimum wage for the hours they worked.

254.    Because Defendants required Plaintiff and the Wisconsin Wage Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiff and the Wisconsin Wage Class minimum wage.

255.    By not paying Plaintiff and the Wisconsin Wage Class at least minimum wage for each hour worked, Defendants have violated Wis. Stat. § 104.01 *et seq.*

256.    As a result of Defendants' violations, Plaintiff and the Wisconsin Wage Class are entitled to unpaid minimum wages, unreimbursed expenses, liquidated damages, attorneys' fees and costs.

## COUNT 3

**Untimely Payment of Wages – Wis. Stat. § 109.01 *et seq.***
**(On Behalf of Plaintiff and the Wisconsin Wage Class)**

257.    Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

258.    During all relevant times, Defendants were covered by Wis. Stat. § 109.02, and Plaintiff and the Wisconsin Wage Class were employees within the meaning of Wis. Stat. § 109.01 and were not exempt from its protections.

35

259.   Wis. Stat. § 109.03(1) requires that Defendants pay Plaintiff and the Wisconsin Wage Class all wages earned by the employee to a day not more than 31 days prior to the date of payment.

260.   By failing to pay Plaintiff and the Wisconsin Wage Class all wages due to them under the FLSA and Wisconsin wage and hour law, Defendants have also violated Wis. Stat. § 109.03(1).

261.   Plaintiff and the Wisconsin Wage Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty-one (31) days beyond their regularly scheduled payday.

262.   Plaintiff's and the Wisconsin Wage Class's entitlement to the wages sought herein is and has been undisputed.

263.   In violating Wisconsin law, Defendants acted willfully, without a good faith basis and with reckless disregard to Wisconsin law.

264.   As a result of Defendants' violations, Plaintiff and the Wisconsin Wage Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional .5 times unpaid wages/unreimbursed expenses in damages under Wis. Stat. § 109.11(2)(a), costs, and attorneys' fees.

## **COUNT 4**

### **Unjust Enrichment**
### **(On Behalf of Plaintiff and the Unjust Enrichment Class)**

265.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

36

266.   The Unjust Enrichment Class has conferred a benefit on Defendants by using their own cars to work for Defendants.

267.   Defendants are aware of and have accepted the benefit conferred on them by the Unjust Enrichment Class.

268.   It would be unjust for Defendants to be permitted to retain the benefit conferred on them by Plaintiff and the Unjust Enrichment Class without commensurate compensation.

269.   Plaintiff and the Unjust Enrichment Class are entitled to equitable restitution of all unreimbursed expenses, unauthorized deductions, and unpaid wages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Nick Mainville prays for all of the following relief:

A.   Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.   Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.   Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.      Designation of Plaintiff as representative of the Wisconsin Wage Class and the Unjust Enrichment Class and counsel of record as Class Counsel of both Rule 23 Classes.

E.      A declaratory judgment that the practices complained of herein are unlawful under Wis. Stat. § 104, Wis. Stat. § 109.03(1), and the Wisconsin wage and hour laws.

F.      An award of unpaid minimum wages and unreimbursed expenses due under Wis. Stat. § 104, Wis. Stat. § 109.03(1), and Wisconsin wage and hour laws.

G.      An award of damages under Wis. Stat. § 109.11(2)(a), based on Defendants' failure to pay wages, calculated as an additional .5 times of back wages.

H.      Liquidated damages under Wis. Stat. § 109.03(1).

I.      An award of restitution as a result of unjust enrichment to the Unjust Enrichment Class.

J.      An award of prejudgment and post-judgment interest.

K.      An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.      Such other legal and equitable relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury as to all triable issues.

Dated:  December 20, 2021                SCHAEFER HALLEEN, LLC

                                          Peter G. Christian (#392131)

38

Timothy S. Christensen (#0396954)
412 South 4th Street, Suite 1050
Minneapolis, MN 55415
pchristian@schaeferhalleen.com
tchristensen@schaeferhalleen.com
Tel: 612-294-2600
Fax: 612-294- 2640


and

Andrew R. Biller *(pro hac vice forthcoming)*
Andrew P. Kimble *(pro hac vice forthcoming)*
Emily A. Hubbard *(pro hac vice forthcoming)*
BILLER & KIMBLE, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45209
Tel: (513) 715-8711
Fax: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

*Counsel for Plaintiff  and the putative class*