UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Nick Mainville, | Case No. 21-cv-2699 (WMW/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| College Town Pizza, Inc.; Route 41 Pizza, LLC; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management Inc.; Susan Graves; Dennis Denman; Doe Corporation 1–10; John Doe 1–10; and Dave Randall, | |
| Defendants. | |

Before the Court are motions to compel arbitration and to transfer or change venue, filed by Defendants College Town Pizza, Inc.; Route 41 Pizza, LLC; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management Inc.; Susan Graves; Dennis Denman; and Dave Randall (Arbitration Defendants). (Dkts. 26, 36).[1] Also before the Court is a motion to dismiss filed by Defendants College Town Pizza, Inc.; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management, Inc.; and Dennis Denman (Dismissal Defendants). (Dkt. 31.) Plaintiff Nick Mainville opposes Defendants' motions. For the reasons addressed below, the Court grants Arbitration Defendants' motion to compel

---

[1] The Court refers to the separate groups of moving Defendants as Arbitration Defendants and Dismissal Defendants while acknowledging that, in addition to addressing dismissal in their motion to compel arbitration, Arbitration Defendants move to change venue in a separate motion.

arbitration, dismisses the case without prejudice, and denies as moot Dismissal Defendants' motion to dismiss and Arbitration Defendants' motion to change venue.

## BACKGROUND

Mainville is a resident of Wisconsin and an employee of Route 41, a Domino's pizza store in Appleton, Wisconsin. Defendants are corporations and individuals that own and operate 178 Domino's Pizza stores in Wisconsin, Minnesota, West Virginia, Ohio, Pennsylvania, Kentucky, South Dakota, North Dakota, and Iowa. In this lawsuit on behalf of himself and other similarly situated delivery drivers, Mainville alleges that Defendants violated the Fair Labor Standards Act (FLSA) and Wisconsin wage-and-hour laws by failing to reimburse delivery drivers adequately for their delivery-related expenses and, thereby, failing to pay delivery drivers minimum wages.

Mainville alleges that delivery drivers work two types of shifts. When stores receive delivery requests, delivery drivers complete deliveries and receive tips. When stores do not receive delivery requests, delivery drivers work inside the stores folding boxes, washing dishes, stocking coolers, preparing food, cleaning the floors, and performing other duties as needed. Tip credits are subtracted from delivery drivers' wages for hours worked "while on the road." Delivery drivers are required to use their personal cars when delivering orders. Defendants require delivery drivers to pay for job-related expenses including "automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties." Delivery drivers receive a per-mile reimbursement that Mainville alleges is below

the IRS standard business mileage rate and has no connection to the actual expenses delivery drivers incur. The stores do not collect receipts for expenses delivery drivers incur for gas, car maintenance or insurance.

In connection with his employment at Route 41, Mainville signed an Arbitration Agreement (the Agreement). The parties to the Agreement are "the Company" and the "Team Member." The "Company" is defined as "Domino's, and includes its parents, subsidiaries, affiliates, predecessors, successors and assigns, their (including the Company's) respective owners, directors, officers, managers (both direct and indirect), team members, vendors, and agents." The "Team Member" is defined as "the individual whose signature and name appear on the last page of [the] Arbitration Agreement." Pursuant to the Agreement, the Company and Mainville agreed "that any claim, dispute, and/or controversy that the Company or the Team Member may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act." The Agreement includes a definition of a covered claim that provides, in relevant part:

> Covered claims include past, current and future disputes or controversies related to a Team Member's job application, hiring, terms and conditions of employment, job assignments, payment of wages, benefits, forms of compensation, or termination from the Company. Covered claims include those brought pursuant to an alleged contract, in tort, pursuant to statute, regulation, or ordinance, or in equity or otherwise and include, but are not limited to, the following:
>
> . . .
>
> Any claim, dispute, and/or controversy under federal, state, or local laws regarding payment of wages, compensation

3

> practices, or benefit plans, including, but not limited to, claims for payment or demand for reimbursement of alleged expenses relating to employment with the Company. Said claims may arise under federal law, including but not limited to the Fair Labor Standards Act ("FLSA"), the Employee Retirement Income Security Act ("ERISA"), or any state wage payment laws . . . .

The Agreement contains an express class action waiver that provides, in relevant part:

> The Team Member and the Company expressly waive any right to arbitrate as a class representative, as a class member, in a collective action, or in or pursuant to a private attorney general capacity, and there shall be no joinder or consolidation of parties. All arbitration shall be brought on a separate and individual basis. In the event an arbitrator or court determines an issue may be brought as a class or in a collective action, then this Agreement is void and null except for Section V., Waiver of Jury Trial, and such class or collective action must be brought in the appropriate court system and not in arbitration.

The Agreement provides that if either party to the Agreement "pursues a covered claim against the other by any method other than the arbitration provided herein, and an exception does not apply, the responding party is entitled to a dismissal, stay and/or injunctive relief regarding such action, and the recovery of all damages in responding." Finally, the Agreement includes an opt-out provision that states:

> The Team Member has the right to opt out of the obligation set forth herein to submit to binding arbitration. To opt out, the Team Member must send via electronic mail or first-class mail, within thirty (30) calendar days of signing this Arbitration Agreement, an email/letter addressed to Domino's, P.O. Box 795, Willmar, MN 56201-0795 stating that the Team Member has elected to opt out of the Arbitration Agreement. The email/letter must clearly state the Team Member's name and must be signed by the Team Member. Absent the proper and timely exercise of this opt-out right, the Team Member will be required to arbitrate all disputes covered by this Arbitration Agreement.

Mainville electronically signed the Agreement on November 9, 2017.

Mainville commenced this lawsuit on December 20, 2021, alleging that Defendants violated the Fair Labor Standards Act (FLSA) and Wisconsin wage-and-hour laws. Count I alleges that Defendants violated the FLSA by incorrectly computing tip credits and failing to properly reimburse delivery drivers for automobile and other job-related expenses. Count II alleges that Defendants violated Wisconsin's minimum-wage law by failing to properly reimburse delivery drivers for automobile and other job-related expenses and by not paying delivery drivers at least minimum wages. Count III alleges that Defendants violated Wisconsin's wage-payment law by failing to pay delivery drivers unpaid wages and unreimbursed expenses within 31 days of the delivery drivers' regularly scheduled payday. Count IV alleges that Defendants have been unjustly enriched because they require delivery drivers to use their personal cars to make deliveries for Defendants.

Arbitration Defendants move to compel arbitration and to transfer or change venue and Dismissal Defendants move to dismiss. Mainville opposes these motions.

## ANALYSIS

### I. Motion to Compel Arbitration

Arbitration Defendants seek to compel arbitration, arguing that the parties agreed to arbitrate any disputes arising out of Mainville's employment. Mainville argues that the Agreement is unconscionable and, therefore, should be disregarded.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, requires the enforcement of written agreements to arbitrate disputes and reflects a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

5

1, 24 (1983). "[C]ontract provisions directing arbitration shall be enforceable in all but limited circumstances." *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003). A motion to compel arbitration must be granted if there is a valid arbitration agreement between the parties and the dispute falls within the scope of the arbitration agreement. *See 3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing 9 U.S.C. § 4). Although state contract law governs whether an enforceable agreement exists, federal law governs whether the dispute is within the scope of the parties' arbitration agreement. *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009). A motion to compel arbitration is analyzed either as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., or as a motion for summary judgment under Rule 56, Fed. R. Civ. P., depending on whether "matters outside the pleadings" are presented and considered. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017); *accord Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).[2]

### A. Existence of an Arbitration Agreement

State contract law governs whether the parties have entered into a valid agreement to arbitrate a particular matter. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). A federal court exercising supplemental jurisdiction over state-law claims in a federal-question action must follow the choice-of-law rules of the forum state, which

---

[2]    The Agreement is a matter outside the pleadings and the parties do not dispute its authenticity. Because the Court may consider an arbitration agreement outside the pleadings when analyzing a motion to compel arbitration, the Court considers the Agreement. *See City of Benkelman*, 867 F.3d at 881–82.

is Minnesota. *See CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 813 (D. Minn. 2018).

Before performing a choice-of-law analysis, "a court must determine that a conflict exists between the laws of two forums." *Nodak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 604 N.W.2d 91, 93–94 (Minn. 2000). The elements of contract formation are the same under Minnesota and Wisconsin law. *See Cederstrand v. Lutheran Bhd.*, 117 N.W.2d 213, 218 (Minn. 1962) (listing "the basic elements" of a contract: "offer, acceptance, and consideration"); *Runzheimer Int'l, Ltd. v. Friedlen*, 862 N.W.2d 879, 885 (Wis. 2015) (explaining that, under Wisconsin law, "[t]he elements of an enforceable contract are offer, acceptance, and consideration"). And Minnesota and Wisconsin courts apply ordinary contract principles to arbitration agreements. *See Stiglich Const., Inc. v. Larson*, 621 N.W.2d 801, 802 (Minn. Ct. App. 2001) (explaining that "[a] party can be required to arbitrate only those disputes it agreed to submit to arbitration"); *Cirilli v. Country Ins. & Fin. Servs.*, 776 N.W.2d 272, 277 (Wis. 2009) (stating that "arbitration is a matter of contract and, as such, no party can be required to submit to arbitration any dispute which he or she has not agreed to submit"). Neither the parties nor the Court's research has identified an outcome-determinative conflict between Minnesota law and Wisconsin law as to contract formation and enforcement of arbitration agreements. As addressed below, the Court would reach the same result analyzing the Arbitration Agreement under either Minnesota law or Wisconsin law.[3]

---

[3] Arbitration Defendants maintain that both Wisconsin and Minnesota courts apply ordinary contract principles to arbitration agreements and do not ask this Court to apply

7

Contract formation requires the communication of a specific and definite offer, acceptance of that offer and consideration. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983) (concluding that an offer of employment on particular terms, accepted by an employee and accompanied by consideration creates an employment contract); *Runzheimer Int'l*, 862 N.W.2d at 885 (explaining that, under Wisconsin law, "[t]he elements of an enforceable contract are offer, acceptance, and consideration"). Courts evaluate the objective conduct of the parties when determining whether the parties have entered into a valid and enforceable contract. *Cederstrand*, 117 N.W.2d at 221. A valid and enforceable contract does not exist when an essential term remains uncertain. *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992); *see also Ehlinger v. Hauser*, 758 N.W.2d 476, 485 (Wis. Ct. App. 2008) (explaining that "[t]he issue of indefiniteness goes to contract formation because the indefiniteness of an essential term prevents the creation of an enforceable contract").

Arbitration Defendants and Mainville do not dispute that the Agreement resulted from an offer, acceptance and consideration. But, Mainville argues, the Agreement is unconscionable as a matter of law and, therefore, invalid because his employer was in a superior bargaining position, the contract was presented to Mainville as a take-it-or-leave-it offer, and the contract solely benefits Defendants. Arbitration Defendants disagree.

Under Minnesota law, an unconscionable contract is one that no person "not under delusion would make on the one hand, and . . . no honest and fair [person] would accept

---

one or the other state's law. Mainville asserts that Wisconsin law governs the contract but that there is no conflict between Wisconsin law and Minnesota law.

on the other." *Matter of Est. of Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987). "To establish unconscionability, a party must demonstrate that it had no meaningful choice but to deal with the other party and to 'accept the contract as offered.' " *Sports & Travel Mktg., Inc. v. Chi. Cutlery Co.*, 811 F. Supp. 1372, 1380 (D. Minn. 1993) (internal quotation marks omitted). Under Wisconsin law, "[u]nconscionability has generally been recognized [when] there is an absence of meaningful choice on the part of one party, together with contract terms that are unreasonably favorable to the other party." *Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 422 (Wis. 2003). "[T]o be declared invalid as unconscionable, the contract or contract provision must be determined to be both procedurally and substantively unconscionable." *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 164 (Wis. 2006). "Procedural unconscionability requires consideration of the factors bearing on a meeting of the minds," *Deminsky*, 657 N.W.2d at 422, and occurs when a party lacks a meaningful choice, *Wis. Auto*, 714 N.W.2d at 165. "[S]ubstantive unconscionability pertains to the reasonableness of the contract terms themselves," *Deminsky*, 657 N.W.2d at 422 (internal quotation marks omitted), and exists when the "contract terms . . . are unreasonably favorable to the other party," *Wis. Auto*, 714 N.W.2d at 165.

Here, the parties agreed to resolve all disputes arising between them exclusively through binding arbitration. Mainville contends that the Agreement is unconscionable—and, therefore, should not be enforced—because of the parties' unequal bargaining power, the contract's take-it-or-leave-it nature and the fact that only Defendants benefit from the Agreement. The Court addresses each argument in turn.

9

### 1. Unequal Bargaining Power

The parties dispute whether the unequal bargaining power of the parties renders the Agreement unconscionable. A claim of unequal bargaining power, without more, is insufficient to invalidate an arbitration agreement in the employment context. *See Webb v. R. Rowland & Co.*, 800 F.2d 803, 807 (8th Cir. 1986) (stating that "[t]he use of a standard form contract between two parties of admittedly unequal bargaining power does not invalidate an otherwise valid contractual provision" and make it unconscionable); *Disc. Fabric House of Racine, Inc. v. Wis. Tel. Co.*, 345 N.W.2d 417, 424 (Wis. 1984) (explaining that simply because the "parties have different options or bargaining power, unequal or wholly out of proportion to each other, does not mean that the agreement of one of the parties to a term of a contract will not be enforced against him; if the term is substantively reasonable it will be enforced" (internal quotation marks omitted)). Mainville's unconscionability argument based on unequal bargaining power rests solely on a mere assertion of inequality. For this reason, Mainville's unequal-bargaining-power argument is insufficient to demonstrate that the Agreement is unconscionable.

### 2. Take-it-or-Leave-it Offer

The parties disagree as to whether the Agreement is a take-it-or-leave-it offer and, therefore, unconscionable. The presentation of a contract on a take-it-or-leave-it basis, without more, does not make it an unenforceable adhesion contract. *See Nw. Nat. Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990) (explaining that "mere non-negotiability . . . does not render an adhesion contract's terms unconscionable" (internal citation and alterations omitted)); *cf. Baker v. Sci. Applications Int'l Corp.*, 273 F. App'x 577, 579 (8th

10

Cir. 2008) (observing that the plaintiff had the arbitration agreement for 23 days before signing it, during which time the plaintiff could have consulted an attorney, attempted to negotiate new terms or sought other employment). An employee alleging that a take-a-leave-it contract is unconscionable may be required to "show that prior to accepting employment, [the employee] was not given the ability to consult with an attorney or to negotiate different terms." *Yufan Zhang v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 917 (D. Minn. 2019). Mainville has not done so. Moreover, the Agreement is not a take-it-or-leave-it contract. The Agreement includes a prominent opt-out provision that gives the employee the right "to opt out of the obligation set forth [in the Agreement] to submit to binding arbitration . . . within thirty (30) calendar days of signing [the] Arbitration Agreement." For these reasons, Mainville's take-it-or-leave-it contract argument does not demonstrate that the Agreement is unconscionable.

### 3.     Unilateral Benefit

The parties also dispute whether the Agreement is unconscionable because only Defendants benefit from the Agreement. Mainville contends that the Agreement only benefits Defendants because arbitration precludes class-action proceedings, limits discovery and is confidential, thereby limiting Defendants' liability and exposure and hampering employees' ability to vindicate their rights. But "federal courts [must] enforce arbitration agreements according to their terms" even when the agreements require individualized arbitration proceedings instead of class or collective proceedings. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619–20 (2018). Mainville does not cite any legal authority in which an arbitration provision has been invalidated on the grounds that

11

arbitration limits discovery and is confidential, nor is the Court aware of any such authority. For these reasons, the Court concludes that the benefits that inure to Defendants as a result of the Agreement do not render the Agreement unconscionable.

In summary, the Agreement is valid and enforceable under either Minnesota law or Wisconsin law.

### B. Scope of the Arbitration Agreement

As the party opposing arbitration, Mainville must demonstrate that his claims are unsuitable for arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000); *see also Cirilli v. Country Ins. & Fin. Servs.*, 776 N.W.2d 272, 277 (Wis. 2009) (explaining that "[t]here is a strong presumption of arbitrability where the contract in question contains an arbitration clause"). Arbitration is mandatory when "the underlying factual allegations simply touch matters covered by the arbitration provision." *Zetor N. Am. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (internal quotation marks omitted). Arbitration provisions are broadly enforced unless the arbitration clause cannot be interpreted to cover the dispute. *See 3M Co.*, 542 F.3d at 1199; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Cirilli*, 776 N.W.2d at 278 (noting that a request to "arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute").

Mainville signed the Agreement as a condition of his employment at Route 41. Under the terms of the Agreement, Mainville agreed to pursue all claims related to wages

and expense reimbursements, as well as claims under the FLSA, in binding arbitration. Mainville filed this lawsuit alleging claims for lost wages, expense reimbursement, violations of the FLSA, and unjust enrichment. The scope of the Agreement fully encompasses Mainville's claims raised here and, therefore, requires this Court to grant Arbitration Defendants' motion to compel arbitration.

Mainville nonetheless maintains that employees cannot be forced to adjudicate FLSA claims in confidential arbitration. "[E]very circuit to consider the question has held that the FLSA allows agreements for individualized arbitration." *Epic Sys.*, 138 S. Ct. at 1626; *accord Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. 2013) (explaining that this "conclusion is consistent with all of the other courts of appeals that have considered this issue and concluded that arbitration agreements containing class waivers are enforceable in FLSA cases"). Mainville identifies no legal authority to the contrary. For this reason, Mainville's claims under the FLSA are arbitrable.

Mainville also contends that Defendants waived their right to arbitration by filing a motion to dismiss and a motion to change venue. "A party waives its right to arbitration if it (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts." *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016) (internal quotation marks omitted); *see also Royce v. Michael R. Needle P.C.*, 950 F.3d 939, 950 (7th Cir. 2020) (explaining that a court "will infer waiver of the right to arbitrate if, considering the totality of the circumstances, a party acted inconsistently with the right to arbitrate," an evaluation that includes consideration of "the diligence or lack thereof of the party seeking arbitration" (internal

13

quotation marks and citations omitted)). A court may find that a party acts inconsistently with its right to arbitrate if it "substantially invokes the litigation machinery before asserting its arbitration right, . . . when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." *Lewallen v. Green Tree Servicing, LLC*, 487 F.3d 1085, 1090 (8th Cir. 2007) (internal quotation marks and alterations omitted); *cf. Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022) (holding that a court need not find prejudice in order to find "that a party, by litigating too long, waived its right to stay litigation or compel arbitration under the FAA"). Here, Arbitration Defendants moved to compel arbitration in a timely manner and before the parties engaged in extensive discovery. Dismissal Defendants' filing of a motion to dismiss Mainville's claims and Arbitration Defendants' filing of a motion to transfer or change venue have no bearing on the timeliness of Arbitration Defendants' motion to compel arbitration. The Arbitration Defendants did not waive their right to compel arbitration.

Because Mainville's claims are arbitrable and encompassed by the Agreement, the Court grants Arbitration Defendants' motion to compel arbitration.[4]

## II. Motions to Dismiss

---

[4] In their brief in support of their motion to compel arbitration, Arbitration Defendants request, in a cursory manner, that the Court award Defendants attorneys' fees and costs. Because Defendants have not filed a motion for attorneys' fees and costs with details as to their requested award, the Court declines to address Defendants' request for attorneys' fees and costs. Defendants may separately move for attorneys' fees and costs as provided by Federal Rule of Civil Procedure 54(d).

Arbitration Defendants move to dismiss or stay the complaint in light of their motion to compel arbitration. Dismissal Defendants move to dismiss Mainville's complaint, arguing that Mainville fails to plausibly allege that he was employed by Dismissal Defendants. Mainville opposes Defendants' motions.

### A.     Arbitration Defendants' Motion to Dismiss or Stay the Case

Arbitration Defendants move to dismiss or stay the complaint in connection with their motion to compel arbitration.

A district court must stay an action until arbitration is completed in accordance with the terms of the agreement. 9 U.S.C. § 3. The United States Court of Appeals for the Eighth Circuit has interpreted Section 3 to mean that, when a federal court grants a motion to compel arbitration, it is within that court's discretion to determine whether to dismiss or stay the case pending arbitration. *See Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015).

All of Mainville's claims are encompassed by the Agreement and, therefore, subject to mandatory arbitration. No party has identified a material difference between staying this case and dismissing it without prejudice. The Court, therefore, dismisses this case without prejudice.

### B.     Dismissal Defendants' Motion to Dismiss

Dismissal Defendants move to dismiss Mainville's complaint, arguing that Mainville fails to plausibly allege that he was employed by Dismissal Defendants. Mainville disagrees. Because the Court grants Arbitration Defendants' motion to compel

15

arbitration and dismisses this case without prejudice, Dismissal Defendants' motion to dismiss is denied as moot.

### III. Motion to Transfer or Change Venue

Arbitration Defendants also move to transfer this case to the United States District Court for the Eastern District of Wisconsin because that District "has substantially greater connections to this action and would be a more convenient forum for the parties and witnesses to this action." Mainville opposes Arbitration Defendants' motion. Because the Court grants Arbitration Defendants' motion to compel arbitration and dismisses this case without prejudice, Arbitration Defendants' motion to transfer or change venue is denied as moot.

### ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendants College Town Pizza, Inc.; Route 41 Pizza, LLC; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management Inc.; Susan Graves; Dennis Denman; and Dave Randall's motion to compel arbitration, (Dkt. 26), is **GRANTED** except as to Defendants' request an award of attorneys' fees and costs, which is **DENIED** without prejudice.

2. Defendants College Town Pizza, Inc.; Route 41 Pizza, LLC; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management Inc.; Susan Graves; Dennis Denman; and Dave Randall's motion to transfer or change venue, (Dkt. 36), is **DENIED AS MOOT**.

3. Defendants College Town Pizza, Inc.; 5 Star Pizza, LLC; Two Ten Twenty Pizza, Inc.; Dough Management, Inc.; and Dennis Denman's motion to dismiss, (Dkt. 31), is **DENIED AS MOOT**.

4. This case is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 19, 2022                      s/Wilhelmina M. Wright
                                                                                Wilhelmina M. Wright
                                                                                United States District Judge